***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Houser and enters the following Opinion and Award:
 *********** EVIDENTIARY MATTERS
On April 16, 2010, Defendants filed with the Industrial Commission a Motion to Reopen the Record and Receive Additional Evidence. Pursuant to N.C.I.C. Rule 701(6) and in the discretion of the Full Commission, Defendants' Motion to Reopen the Record and Receive Additional Evidence is DENIED. *Page 2 
 *********** EXHIBITS
At the hearing before the Deputy Commissioner, Plaintiff submitted the following:
 a. An Accident Report signed by Jeannine Reno, which was admitted into the record and marked as Plaintiff's Exhibit (1);
 b. A Phone Message Note dated August 9, 2006, which was admitted into the record and marked as Plaintiff's Exhibit (2);
 c. Short-Term Disability Related Documents, which were admitted into the record and collectively marked as Plaintiff's Exhibit (3);
 d. Plaintiff's May 2006 Wage Earnings Record, which was admitted into the record and marked as Plaintiff's Exhibit (4) and;
 e. A Job Description, which was admitted into the record and marked as Plaintiff's Exhibit (5).
Subsequent to the hearing before the Deputy Commissioner, Defendants submitted the following:
 a. Additional Medical Records, which were admitted into the record and collectively marked as Defendants' Exhibit (1), and including 1A, 1B, 1C, and 1D.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 3 
l. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between Plaintiff-Employee and Defendant-Employer on May 18, 2006.
5. Plaintiff sustained a compensable injury by accident on May 18, 2006.
6. Plaintiff's average weekly wage is $388.57, yielding a compensation rate of $259.06.
7. Plaintiff was paid ongoing total disability compensation from May 26, 2006, to June 15, 2008, in the amount of $389.69, and from June 15, 2008, to the present in the amount of $259.06.
8. At the hearing before the Deputy Commissioner the parties submitted the following:
 a. Three Notebooks of Medical Records (2) Medical records (pp. 1-1352), which were admitted into the record and marked as Stipulated Exhibit (2);
 b. A Packet of Industrial Commission Forms, which was admitted into the record and marked as Stipulated Exhibit (3) and;
 c. A Packet of Short Term Disability Forms, which was admitted into the record and marked as Stipulated Exhibit (4). *Page 4 
9. Also made part of the record are the depositions of Dr. Christopher Edwards, Dr. Timothy Collins, Dr. Cindy Amundsen, Dr. Robert Sexton, Dr. Sheritia Faulcon, and Dr. John Warren.
10. At the hearing before the Deputy Commissioner, the parties agreed to stipulate that Plaintiff's husband's testimony would be corroborative of her testimony.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was thirty-nine (39) years old. Plaintiff is a high school graduate, is certified as a Nursing Assistant II, and she has received training toward becoming a licensed Registered Nurse. Prior to her employment with Defendant-Employer, Plaintiff worked as a department manager for Roses Stores and in the UNC Orthopedics and Trauma departments.
2. Plaintiff began her employment with Defendant-Employer in 1994. At the time of her May 18, 2006 injury by accident, Plaintiff worked as an Order Fulfillment/Gift Wrap Supervisor. In that capacity, Plaintiff's duties included customer service, taking telephone orders, preparing gift baskets, and supervising the gift department.
3. On May 18, 2006, Plaintiff sustained an admittedly compensable injury by accident when a co-worker on a ladder near Plaintiff, who was sitting at her desk, caused a box containing an older model cash register to fall from a shelf and strike Plaintiff in her left shoulder and back. The shelf was approximately eight (8) feet above Plaintiff's desk and the box was approximately two (2) feet wide and eighteen (18) inches in depth. *Page 5 
4. Following this incident, Plaintiff experienced immediate onset of a stabbing type pain in her back and left shoulder, and began to leak urine (Plaintiff had a pre-existing bladder condition).
5. Defendants admitted compensability of this incident through an Industrial Commission Form 60 dated June 22, 2006. This form was not filed immediately upon its completion, but is now part of the record. Pursuant to this Form, Defendants began paying Plaintiff ongoing total disability compensation at the rate of $389.69. Later an Industrial Commission Form 22 Wage Chart was prepared and Plaintiff's average weekly wage was recomputed, yielding a compensation rate of $259.06. Plaintiff then began receiving weekly compensation at this new rate on June 15, 2008, and continues to receive weekly compensation in that amount.
6. Defendants have not sought collection of any overpayment of indemnity compensation.
7. Prior to May 18, 2006, Plaintiff had multiple pre-existing medical conditions. Plaintiff has a history of bladder related problems, including detrusor instability. Plaintiff underwent a urethral ultrasound on February 26, 1998, that revealed no cystic regions in the tissues adjacent to the urethra. In 2000, Plaintiff had an interstim unit implanted which significantly controlled her bladder related problems. For these problems, Plaintiff has primarily been treated by Dr. Cindy Amundsen of Duke University Medical Center. Plaintiff's interstim unit has been repaired or replaced on multiple occasions.
8. Plaintiff also has a long history of Type II diabetes and history of high blood pressure. *Page 6 
9. Additionally, Plaintiff has been hospitalized for many conditions. On April 17, 2002, Plaintiff underwent a partial colostomy, end colostomy, and umbilical herniorrhaphy. This surgery was performed by Dr. David W. Ollila.
10. Plaintiff also has a long history of chronic pain throughout her back and degenerative joint disease. Plaintiff's back problems began as early as November 1998 and she has been prescribed various medications as treatment. On June 4, 1999, Plaintiff was treated by her family physician for upper back pain between her shoulder blades. On June 24, 2000, Plaintiff underwent an MRI of her cervical, thoracic, and lumbosacral spine, which revealed no evidence of spinal cord compression. In 2003, Plaintiff began treating with Dr. Jeffrey Reznik, who assigned work restrictions due to the poor condition of her back muscles. Plaintiff was not to stand for approximately twenty to thirty (20-30) minutes at any time and was to have the ability to sit and rest as needed. On July 15, 2004, an x-ray revealed mild degenerative changes in Plaintiff's lower thoracic spine. A lumbar CT myelogram taken on October 21, 2004, revealed mild stenosis of the spinal canal between L3 and S1, and a reduction in height of the L5-S1 disk posteriorly with a small posterior osteophyte at that level.
11. Plaintiff suffered from depression prior to May 18, 2006, for which her family physician had prescribed antidepressants. Also, upon the referral of Dr. Reznik, Plaintiff has received treatment for her depression at the UNC Psychiatry Department from Dr. Alexander McDonald. Plaintiff first saw Dr. McDonald on February 23, 2004, and reported a long history of depression that had grown worse over the past three years. Plaintiff also reported having difficulty with her sleep, reduced energy, and reduced concentration. Plaintiff's depression was linked to her multiple physical problems and other stressors. Plaintiff's treatment included, among *Page 7 
other things, adjustments to her medications. In April 2005, Plaintiff was referred by UNC Psychiatry for psychotherapy.
12. On October 27, 2005, Plaintiff was evaluated by Dr. Sheritia Faulcon at UNC Psychiatry, who diagnosed Plaintiff as having major depression and a bipolar disorder and later determined that cognitive behavioral therapy (CBT) would be appropriate. Dr. Faulcon also prescribed medications to assist with Plaintiff's symptoms, and conducted multiple CBT sessions, which began on November 3, 2005. A goal of CBT is to teach symptom management.
13. During the course of her treatment with Dr. Faulcon, Plaintiff continued to work for Defendant-Employer.
14. During her CBT sessions with Dr. Faulcon, Plaintiff expressed difficulties with work, family issues, pain and medical problems, and suicidal ideations. Plaintiff's CBT sessions continued into 2006. In April 2006, Plaintiff was hospitalized due to the severity of her depression. After being discharged, Plaintiff resumed her CBT sessions. At her last appointment at UNC prior to May 18, 2006, Plaintiff reported that her mood was much improved.
15. Prior to her May 18, 2006, injury by accident, Plaintiff missed work for various periods due to her multiple medical conditions. However, Plaintiff always returned to work for Defendant-Employer after each medically related absence.
16. Also prior to her May 18, 2006, injury by accident, Plaintiff applied for short term disability, but this was denied. Thereafter, Plaintiff returned to work and was working part-time on the date of her accident.
17. After her May 18, 2006, injury by accident, Plaintiff sought treatment at the UNC Hospitals Emergency Room, where she reported how she was injured and that she was experiencing severe pain in multiple locations of her back. X-rays of her lumbar and thoracic *Page 8 
spine revealed no fractures. Other tests revealed that the sacral lead of the interstim unit had been dislodged by the force of the impact. Spinal studies indicated that Plaintiff's pre-existing degenerative disc disease had progressed in levels T7-T10 of the thoracic spine, and that there was a slight increase in anterior osteophytosis at the levels of L2 and L3. The results of the 2006 spinal studies were compared to one performed on October 23, 2003. Plaintiff was restricted to lifting no more than fifteen (15) pounds until she healed, restricted from strenuous activity, and was instructed to apply ice and continue her prescribed medications.
18. Pursuant to their Form 60, Defendants admitted liability for the dislodgement of Plaintiff's interstim bladder implant and the injuries to her mid and lower back.
19. On May 22, 2006, Plaintiff returned to UNC Family Medicine where she was treated by Dr. Susan Slatkoff. Dr. Slatkoff noted that Plaintiff was in obvious discomfort, reported having difficulty moving around, and having fallen the previous night due to the severity of her pain. Dr. Slatkoff medically excused Plaintiff from work for an undetermined period of time.
20. Plaintiff's out-of-work status was extended by Dr. Kathleen Barnhouse on June 1, 2006, also for an undetermined period of time. On June 1, 2006, Dr. Barnhouse noted that Plaintiff's high blood pressure was uncontrolled due to the severity of her back pain. Dr. Barnhouse then increased Plaintiff's blood pressure related medication.
21. On May 29, 2006, Plaintiff was examined by Dr. Timothy Collins at Duke Pain and Palliative Care Clinic for her chronic pain and reported that her back pain was worsened as the result of her injury by accident. A CT myelogram revealed a minimal disc bulge at L5-S1. Dr. Collins diagnosed Plaintiff as having chronic musculoskeletal back pain and increased the dosage *Page 9 
of her pain medication. On July 5, 2006, Dr. Collins referred Plaintiff for physical therapy and she participated in physical therapy three times a week beginning in August 2006.
22. On July 10, 2006, Plaintiff underwent surgery to correct the displaced lead on the interstim unit.
23. On the referral of Dr. Collins, Plaintiff was examined by Dr. Lesco Rogers, an anesthesiologist, on July 17, 2006, for possible lumbar steroid injections for her pain. Prior to May 18, 2006, Plaintiff had never been considered for nor had injections for pain. Dr. Rogers diagnosed Plaintiff as having low back pain with mixed mechanical and radicular features. Dr. Rogers then referred Plaintiff to Dr. Christopher Edwards for a psychological evaluation to determine the appropriateness of injections and other medication strategies.
24. On July 25, 2006, Dr. Martha Peck at UNC noted that Plaintiff's diabetes had worsened to some degree as the result of her injury by accident and other life stressors. On August 7, 2006, Dr. Susan Braithwaite at UNC also noted the worsening of Plaintiff's diabetes, and increased her medication. Dr. Braithwaite also noted that Plaintiff's blood pressure was high, and started Plaintiff on a new medication.
25. Dr. Braithwaite has treated and monitored Plaintiff's condition since at least July 13, 2003, and continued to do so through to the end of 2006. Dr. Braithwaite opined that the increases in Plaintiff's blood sugars and blood pressure were causally related to her May 18, 2006, injury by accident as evidenced by the need to increase or change her medications.
26. On August 9, 2006, Plaintiff was first evaluated by Dr. Edwards for her psychological conditions and reported that her pre-existing back pain was made constantly severe as the result of her May 18, 2006, injury by accident. Dr. Edwards diagnosed Plaintiff as having a recurrent major depressive disorder without psychotic features, and generalized anxiety disorder. *Page 10 
27. On August 16, 2006, Dr. Collins noted that Plaintiff was not sleeping well, could not get comfortable due to the pain, and that her pain was made worse with movement, e.g., bending and lifting, and sitting or standing for more than ten to fifteen (10-15) minutes. Dr. Collins further noted that Plaintiff had an altered gait, a depressed mood, and flat affect. Plaintiff was urged to continue physical therapy and biofeedback and was prescribed a muscle relaxer. Prior to this appointment, Plaintiff had not been taking muscle relaxers.
28. On August 29, 2006, Plaintiff again returned to Dr. Edwards and reported increased feelings of depression. Dr. Edwards again increased her anti-depressant medication. On September 20, 2006, Dr. Edwards scheduled Plaintiff for psychotherapy sessions in addition to her scheduled biofeedback sessions. Plaintiff's participation in physical therapy was continued.
29. On November 30, 2006, Plaintiff reported a suicidal ideation with a plan in to Dr. Edwards' office and was admitted to the hospital until release on December 7, 2006.
30. Plaintiff testified that prior to her injury, her therapy and medications were helping with her symptoms of depression. Plaintiff further testified that after May 18, 2006, she often has had suicidal thoughts and has experienced a loss of interest in activities. Plaintiff further testified that since the injury by accident, every time she thinks she is getting better, something else bad occurs.
31. In February 2007, Plaintiff's interstim lead migrated again and she began experiencing an increase in voiding episodes. The lead was repaired in April 2007. However, the wire protruded and the surgery site became infected, causing Plaintiff to be readmitted to the hospital from May 11 to May 18, 2007, during which the interstim device was removed. The unit has not been re-implanted to date. *Page 11 
32. On June 12, 2007, Plaintiff was examined by Dr. Susan Spratt, an endocrinologist. Plaintiff reported tingling and numbness in her feet. Dr. Spratt reviewed Plaintiff's diabetes history and stressed the importance of controlling her diet and monitoring her blood sugar. On July 12, 2007, Plaintiff returned to Dr. Spratt, and because Plaintiff had a blood pressure below seventy (70) she was transported to the hospital by ambulance. At Duke University's Emergency Room, Plaintiff reported experiencing significant low back pain and was given morphine.
33. Dr. Collins testified that there was no evidence that Plaintiff was seeking secondary gain. Dr. Edwards testified stated that he observed no "red flags" signifying symptom magnification.
34. The undersigned find Plaintiff's testimony regarding her physical and psychological conditions and their deterioration since her May 18, 2006, injury by accident to be credible. This finding is based in part due to the fact that each of Plaintiff's physicians has found her also to be credible with regards to her descriptions of symptoms and overall condition.
35. Dr. Edwards, Plaintiff's treating psychologist since August 2006, opined that Plaintiff's pre-existing depression and associated symptoms were exacerbated as the result of her May 18, 2006, injury by accident. Dr. Edwards testified that Plaintiff's injury by accident was "the straw that broke the camel's back." Specifically, Dr. Edwards opined that the duration of particularly bad periods and the intensity of Plaintiff's depression were worse after the accident.
36. Dr. Faulcon has testified that based upon pre-accident medical notes as compared to post-accident medical notes, Plaintiff's emotional state was worse subsequent to May 18, 2006.
37. Dr. Collins has treated Plaintiff for her back pain since her May 18, 2006, injury by accident. Dr. Collins opined that Plaintiff's pre-existing back condition was significantly *Page 12 
exacerbated by her May 18, 2006, injury by accident. Dr. Collins further opined that since her May 18, 2006, injury by accident, Plaintiff has functioned at a much lower level.
38. Dr. Amundsen has testified that she will not repair Plaintiff's interstim unit until such time as her blood glucose levels are under control.
39. Dr. Edwards opined to a reasonable degree of medical certainty that Plaintiff's May 18, 2006, injury by accident substantially aggravated her pre-existing depression.
40. The undersigned give greater weight to the testimony and opinions of Drs. Edwards, Collins, and Amundsen, as Plaintiff's treating providers each has been in a better position to observe the effects of this accident on Plaintiff. The undersigned give less weight to the testimony and opinions of Drs. Warren and Sexton.
41. Based upon the totality of the credible evidence of record, Plaintiff's pre-existing back and bladder conditions, as well as the ongoing problem of not being able to have her interstim unit re-implanted due to the causally related worsening of her diabetes problems, were materially aggravated for the worse as the result of her May 18, 2006, injury by accident.
42. Based upon the totality of the credible evidence of record, Plaintiff's pre-existing diabetes condition was materially aggravated for the worse as the result of her May 18, 2006, injury by accident.
43. Based upon the totality of the credible evidence of record, Plaintiff's pre-existing depression and psychological problems were materially aggravated for the worse as the result of her May 18, 2006, injury by accident.
44. There is insufficient evidence of record to find that Plaintiff's pre-existing high blood pressure condition was materially aggravated for the worse as the result of her May 18, 2006, injury by accident. *Page 13 
45. Plaintiff has not returned to any work since the accident, neither Dr. Collins nor Dr. Edwards have released Plaintiff to return to work.
46. Based upon the totality of the credible vocational and medical evidence of record, and as the result of her admittedly compensable May 18, 2006, injury by accident and her materially aggravated back, bladder, and psychological conditions, as well as her materially aggravated diabetes, Plaintiff has been unable to earn any wages in her former employment with Defendant-Employer or in any other employment for the period of May 18, 2006, through the present and continuing.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 18, 2006, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with Defendant-Employer wherein she sustained an injury to her back and her bladder interstim unit was dislodged. N.C. Gen. Stat. § 97-2(6)
2. When a pre-existing, non-disabling, physical or psychological condition is aggravated or accelerated by a compensable workplace accident, such that disability results, the employer must compensate the employee for the entire resulting disability. Brown v. FamilyDollar Distrib. Ctr., 129 N.C. App. 361, 499 S.E.2d 197 (1998).
3. Based upon the totality of the credible evidence of record, Plaintiff's pre-existing diabetes condition was materially aggravated for the worse as the result of her May 18, 2006, *Page 14 
injury by accident. N.C. Gen. Stat. § 97-2(6); Brown v. FamilyDollar Distrib. Ctr., 129 N.C. App. 361, 499 S.E.2d 197 (1998).
4. Based upon the totality of the credible evidence of record, Defendants have failed to rebut the Parsons' presumption regarding Plaintiff's post accident bladder and interstim unit problems as well as her back problems. Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005),Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997).
5. Even without the Parsons' presumption, based upon the totality of the credible evidence of record, Plaintiff's pre-existing back and bladder conditions, as well as the ongoing problem of not being able to have her interstim unit re-implanted due to the causally related worsening of her diabetes problems, were materially aggravated for the worse as the result of her May 18, 2006, injury by accident. N.C. Gen. Stat. § 97-2(6); Brown v. Family DollarDistrib. Ctr., 129 N.C. App. 361, 499 S.E.2d 197 (1998),Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997).
6. Based upon the totality of the credible evidence of record, Plaintiff's pre-existing depression and psychological problems were materially aggravated for the worse as the result of her May 18, 2006, injury by accident. N.C. Gen. Stat. § 97-2(6); Brown v. Family DollarDistrib. Ctr., 129 N.C. App. 361, 499 S.E.2d 197 (1998).
7. There is insufficient evidence of record to find that Plaintiff's pre-existing high blood pressure condition was materially aggravated for the worse as the result of her May 18, 2006, injury by accident. N.C. Gen. Stat. § 97-2(6); Brown v. Family DollarDistrib. Ctr., 129 N.C. App. 361, 499 S.E.2d 197 (1998).
8. As the result of her admittedly compensable May 18, 2006, injury by accident and her materially aggravated back, bladder, and psychological conditions, as well as her materially *Page 15 
aggravated diabetes, Plaintiff is entitled to have defendants continue to pay her ongoing total disability compensation at the rate of $259.06 per week for the period of May 18, 2006, through the present and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
9. As the result of her admittedly compensable May 18, 2006, injury by accident and her materially aggravated back, bladder, and psychological conditions, as well as her materially aggravated diabetes, Plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including the expenses associated with treatment provided and recommended by Drs. Amundsen, Collins, Rogers, and Edwards, and transportation associated therewith, when bills for the same have been processed pursuant to procedures established by the Industrial Commission. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendants shall pay or continue to pay Plaintiff, subject to the attorney's fee provided for hereinafter, ongoing temporary total disability (TTD) compensation at the rate of $259.06 per week for the period of May 18, 2006, through the present and continuing until further order of the Commission. Any payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by Plaintiff as the result of her admittedly compensable May 18, 2006, injury by accident and her *Page 16 
materially aggravated back, bladder, and psychological conditions, as well as her materially aggravated diabetes, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including the expenses associated with treatment provided and recommended by Drs. Amundsen, Collins, Rogers, and Edwards, and transportation associated therewith, when bills for the same have been processed pursuant to procedures established by the Industrial Commission.
3. An attorney's fee of twenty-five percent (25%) of any accrued back payment of TTD is approved for Plaintiff's attorney. Thereafter, every fourth (4th) TTD check shall be made payable and forwarded to Plaintiff's attorney until further order of the Commission.
4. Defendants shall pay the costs.
This the 4th day of June, 2010.
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
S/___________________ PAMELA T. YOUNG CHAIR
S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1